UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JUNIOR-TONY DIEUJUSTE, holder in due
course of ®Junior Tony Dieujuste©,

                                                                    **OPINION & ORDER**
                              Plaintiff,

                                                                    23-CV-7805
              v.                                                    (Marutollo, M.J.)

JESSICA SIN, KEISHA KEARSE, and
all successors and assigns.

                              Defendants.
-------------------------------------------------------------------x

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

Plaintiff Junior-Tony Dieujuste, proceeding *pro se*, brings this action alleging trademark

infringement, slander, libel, and failure to protect or act against Defendants Judge Jessica Sin[1] and

Clerk of Court Keisha Kearse of the Family Court of the State of New York (collectively,

"Defendants").  *See generally* Dkt. No. 1 ("Compl.").

Currently pending before this Court is Defendants' motion to dismiss the Complaint.[2]  *See*

Dkt. Nos. 8, 17.  For the reasons set forth below, the Court **GRANTS** Defendants' motion and

dismisses Plaintiff's Complaint with prejudice.

**I.      Background**

    **A.      Factual background**

The following facts are taken from the Complaint and the parties' submissions related to

Defendants' motion to dismiss.  *See* Dkt. Nos. 1, 8, 16, 17, 18.

---

[1] As explained further below, at the time of the allegations in the Complaint, Judge Sin served as a Support
Magistrate in the Family Courts of Bronx, New York, and Queens counties prior to her appointment to the
bench.  *See, e.g.,*  https://www.nyc.gov/site/macj/appointed/family-court.page. (last accessed Apr. 26,
2024).

[2] On November 29, 2023, the parties consented to jurisdiction to the assigned United States Magistrate
Judge in this matter.  Dkt. Nos. 11, 13.

On June 23, 2022, an individual identified as Keyona N. Florence filed an Initial Support Petition in the Family Court of the State of New York (the "Family Court Petition"), seeking current and retroactive child support from Plaintiff.  *See* Compl, at ¶¶ 8, 21-38.[3]  A summons accompanied the Family Court Petition and required Plaintiff to appear on February 22, 2023 in the Family Court of the State of New York, County of Queens, before Judge Sin, then a Support Magistrate.  *Id.* at 22.

On February 22, 2023, Judge Sin issued a Temporary Order of Support directing Plaintiff to remit ongoing child support payments.  *See* Dkt. No. 8 at 1.  On April 18, 2023, an Income Withholding Order was issued to Plaintiff's employer, garnishing Plaintiff's wages for child support.  Compl. ¶¶ 10; 38-44.  Additionally, on October 4, 2023, a National Medical Support Notice was issued to Plaintiff's employer, requiring health insurance enrollment for his children.  *Id.* at 45-54.

On April 27, 2023, Plaintiff served Defendants with a "New York State Department of State Certificate of Service Mark Registration," dated April 27, 2023, for the name "Junior-Tony Dieujuste," as well as "Notice of Trademark Infringement," "Trademark License Agreement," and other related documents.  *See* Compl. ¶ 11, 57-83; Dkt. No. 8 at 2.

**B.    Procedural history**

On October 19, 2023, Plaintiff, proceeding *pro se*, filed the instant Complaint against the Defendants.  *See* Compl., Dkt. No. 1.  Read liberally, the Complaint alleges that Defendants committed violations of federal trademark, copyright, and patent law, as well as slander, libel, and a failure to protect or act.   *See* Compl. at ¶¶ 24-27.  In short, Plaintiff alleges that Defendants' references to his name on the Family Court documents unlawfully infringed on a service mark that

---

[3] This Court references the ECF-generated page numbers.

Plaintiff purports to have registered on April 17, 2023 *nunc pro tunc* on October 27, 1980.[4]  *Id.* at ¶¶ 9, 62.

The Complaint seeks various forms of relief purportedly governed by Plaintiff's "Fee Schedule," namely, damages of $50,000 per occurrence of service mark infringement and failure to protect or act for each use of his name in court proceedings; damages of $100,000 per occurrence of slander or libel; injunctive relief enjoining Defendants from invoking his service mark; an order compelling Defendants to communicate the injunction to third parties, an order to "seize and deliver" all materials with the relevant service mark to Plaintiff before destroying them; and a declaration that Defendants' actions and omissions are causes of action under various sections of the United States Code.  *See* Compl., ¶¶ 23-32.

On October 25, 2023, Plaintiff served Defendants.  Dkt. No. 6.

On November 14, 2023, Defendants filed a letter-motion for a pre-motion conference letter, which the Court deemed Defendants' motion to dismiss the Complaint.  *See* Dkt. No. 8.[5]  In their motion to dismiss, Defendants assert that the Complaint (i) fails to establish this Court's subject matter jurisdiction and (ii) fails to state a claim upon which relief can be granted.  *See* Dkt. No. 8 at 2-3.

---

[5] An in-person pre-motion conference was held before the undersigned regarding Defendants' motion to motions themselves – under appropriate circumstances." *Kapitalforeningen Lægernes Inv. v. United Techs. Corp.*, 779 F. App'x 69, 70 (2d Cir. 2019) (affirming the district court construing pre-motion letters as the motions themselves).  "A court does not abuse its discretion in construing a pre-motion letter as the motion itself, where the party seeking leave to file the motion had a sufficient opportunity to make the necessary arguments to preserve its position for appellate review" *Loeb v. Cnty. of Suffolk*, No. 22-CV-6410 (HG), 2023 WL 4163117, at *1 (E.D.N.Y. June 23, 2023) (citing *In re Best Payphones, Inc.*, 450 F. App'x 8, 15 (2d Cir. 2011) (affirming the district court converting a pre-motion letter to a motion).  Defendants subsequently filed a reply brief (Dkt. No. 17) and Plaintiff filed, without Court approval, a sur-reply (Dkt. No. 18).

As a threshold matter, Defendants assert that sovereign immunity bars claims for damages against state judges in their official capacity.  *Id.* at 2.  Specifically, as Plaintiff fails to point to a waiver of sovereign immunity (and as a waiver does not exist in this case), Defendants contend that Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.  *Id.*  Additionally, to the extent that Plaintiff seeks to hold Judge Jessica Sin accountable in her judicial capacity, Defendants argue that such claims are barred due to the absolute immunity afforced to Support Magistrates acting in their judicial capacity.  *Id.*  Third, Defendants argue that this Court may not exercise federal question jurisdiction in this instance pursuant to the domestic-relations abstention doctrine.  *Id.* at 2-3.  Finally, Defendants assert that, to the extent that Plaintiff is attempting to invalidate his child support orders, the *Rooker-Feldman* doctrine bars Plaintiff's claims as an improper appeal of final state court judgments.  In the alternative, Defendants assert that the instant Complaint fails to state a claim upon which relief can be granted where Plaintiff fails to provide evidence of a "valid patent, trademark, service mark, or copyright" and his claims sounding in "sovereign citizen theories" should be dismissed as meritless.  *Id.* at 3.

Plaintiff, in his Opposition to Defendants' Motion to Dismiss, argues that Defendants have failed to appropriately respond and rebut the claims asserted in his Complaint.  *See* Dkt. No. 16, at 10-11.  Further, Plaintiff asserts that the cases cited by Defendants are "an attempt to confuse the issues of the instant matter before this court"—noting that many of the cases cited by Defendants do not implicate a trademark or service mark.  *Id.* at 11-13

## II.   Legal standards

### A.      Fed. R. Civ. P. 12(b)(1)

"When a party moves for dismissal under Rule 12(b)(1) and on other grounds, courts consider the Rule 12(b)(1) challenge first."  *Whyte v. Bayview Loan Servicing, LLC*, No. 21-CV-

3301 (PKC) (LB), 2022 WL 4484664, at *3 (E.D.N.Y. Sept. 27, 2022) (cleaned up). "This is because if a court determines that it lacks subject matter jurisdiction, then the defendant's 'other defenses and objections become moot and do not need to be determined.'" *Id.* (quoting *Daly v. Citigroup Inc.*, 939 F.3d 415, 426 (2d Cir. 2019)). "Federal courts must determine that they have jurisdiction before proceeding to the merits." *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

In reviewing a motion to dismiss under Rule 12(b)(1), courts must "accept as true all material factual allegations in the complaint," and refrain from "drawing from the pleadings inferences favorable to the party asserting jurisdiction." *Whyte*, 2022 WL 4484664, at *3 (cleaned up). "The party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (cleaned up). "Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking." *Id.* (cleaned up).

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Lee v. Banks*, No. 23-CV-5800 (JLR), 2024 WL 1657908, at *3 (S.D.N.Y. Apr. 17, 2024) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). "Where, as here, the defendant moves for dismissal under Rule 12(b)(1) as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Lee*, 2024 WL 1657908, at *3 (citations omitted).

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject matter jurisdiction. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000). "Although

courts hold pro se complaints 'to less stringent standards than formal pleadings drafted by lawyers,' *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), *pro se* litigants must establish subject matter jurisdiction, *see, e.g., Rene v. Citibank N.A.*, 32 F. Supp. 2d 539, 541-42 (E.D.N.Y. 1999)." *Panchitkhaew v. Long Island Jewish Med. Ctr.*, No. 18-CV-4434 (JFB)(AKT), 2019 WL 1492780, at *2 (E.D.N.Y. Apr. 4, 2019).   If subject matter jurisdiction is lacking, the action must be dismissed.  *Id*. at 700-01; Fed. R. Civ. P. 12(h)(3).

### B.      Fed. R. Civ. P. 12(b)(6)

"To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id*. (quoting *Twombly*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted) and must show that the court has subject matter jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999); Fed. R. Civ. P. 12(h)(3).

"[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."  *Lynch v. City of New York*, 952 F.3d

67, 75 (2d Cir. 2020).  Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  The Court must accept the well-pleaded factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff; however, the court need not "credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation and internal quotations omitted). "District courts must interpret a *pro se* complaint to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (cleaned up); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).  Moreover, at the pleadings stage of the proceeding, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010), *aff'd* 133 S. Ct. 1659 (2013) (citation omitted).

**III.**   **Discussion**

**A.**   **This Court does not possess subject matter jurisdiction over this action**

As a threshold matter, this Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction as (1) Defendants are entitled to absolute immunity in their capacity as judicial officers, (2) the Domestic-Relations Abstention Doctrine requires this Court to abstain from exercising its federal question jurisdiction over squarely matrimonial matters, and (3) the *Rooker-Feldman* doctrine bars Plaintiff's claims to the extent that he seeks review of state court judicial proceedings and determinations.

### 1.    Absolute immunity

Federal subject matter jurisdiction is limited and available only when: (1) a "federal question" is presented, 28 U.S.C. § 1331; or (2) the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00.  28 U.S.C. § 1332(a).  "[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived."  *United States v. Cotton*, 535 U.S. 625, 630 (2002).  Courts "have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).  As noted above, "Plaintiffs, even those proceeding *pro se*, bear the burden of proving that subject matter jurisdiction exists."  *Kuai Le Chen v. Nielsen*, 365 F. Supp. 3d 292, 294 (E.D.N.Y. 2019).

Here, the Complaint seeks damages from Judge Sin based on alleged conduct perpetrated in her official capacity as a Support Magistrate in the Family Court of the State of New York, County of Queens.  *See generally,* Compl.  Plaintiff's claim against Judge Sin, however, may not proceed given the sovereign and absolute immunity afforded to state judicial officials.  Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *accord Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  *Bliven*, 579 F.3d at 210; *accord Kirkland v. Minihan*, No. 20-CV-8973, 2020 WL 6729409, at *1 (S.D.N.Y. Nov. 13, 2020); *Barton v. Clark*, No. 23-CV-5827 (LGS), 2023 WL 6929178, at *4 (S.D.N.Y. Oct. 19, 2023).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity."  *Bliven*, 579 F.3d at 209.  This is because, "[w]ithout

insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

Judicial immunity does not apply when the judge acts outside her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in the absence of jurisdiction." *Mireles*, 502 U.S. at 13; *accord Hart v. Thompson*, No. 23-CV-3289, 2023 WL 3949041, at *5 (S.D.N.Y. June 12, 2023); *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But no such claim is plausibly raised here. Indeed, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *accord Lewis v. Doe*, No. 23-CV-1934, 2023 WL 3977062, at *2 (S.D.N.Y. June 12, 2023).

Additionally, the fact that Judge Sin served as a Support Magistrate, rather than as a judge, at the time of the allegations in the Complaint, does not render her any less entitled to judicial immunity. As noted in a recent ruling in the case styled *Cora v. Wright*, No. 1:24-CV-0263 (LTS), 2024 WL 450247, at *2 (S.D.N.Y. Feb. 5, 2024),

> Family Court Support Magistrates, as New York State judicial officers, enjoy [] judicial immunity, when presiding over child support proceedings. *See Arce v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at *5 (S.D.N.Y. Dec. 16, 2020); *Charles v. Lopez*, No. 19-CV-8706 (CM), 2019 WL 5261154, at *2 (S.D.N.Y. Oct. 15, 2019); *Roger of the Fam. Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting other district court cases within the Second Circuit).

2024 WL 450247, at *2; *see also Lomtevas v. Cardozo*, 95-CV-2779, 2006 WL 229908, *5 (E.D.N.Y. Jan. 31, 2006) ("As a Support Magistrate in the Family Court, [Defendant's] actions were the same as those of a judge. Her decisions were both judicial in nature and subject to review. Therefore, she is entitled to absolute immunity for her role as a Support Magistrate."); *Ramos v.*

*Putnam Fam. Ct.*, No. 15-CV-1443 (VAB), 2017 WL 3083727, at *3 (D. Conn. July 18, 2017) ("Judicial immunity also entitles state officials that make decisions as to child support payments and enforcement to "absolute quasi-judicial immunity" because, in that capacity, their "actions [are] the same as those of a judge," in that their decisions are "both judicial in nature and subject to review.").[6]   As a Support Magistrate presiding over child support proceedings, Judge Sin is unquestionably entitled to judicial immunity.  In light of her immunity, Plaintiff may not proceed on her claims against Judge Sin.

Likewise, Plaintiff's claims against Kearse are also barred on immunity grounds.  Absolute immunity extends to court clerks "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997); *see also Raghubir v. Cogan*, No. 21-CV-6705 (PKC) 2022 WL 1085298, at *3 (E.D.N.Y. Apr. 11, 2022) ("The unnamed Clerk's Office staff members who allegedly refused Plaintiff's submissions are also absolutely immune from this lawsuit.").  "Absolute judicial immunity extends to non-judicial officers who perform acts that are 'functionally comparable' to that of a judge' or 'are integrally related to an ongoing judicial proceeding.'" *Raghubir*, 2022 WL 1085298, at *3 (quoting *Mitchell v. Fishbein*, 377 F.3d 157, 172 (2d Cir. 2004) (citations omitted)); *see, e.g., Lewis v. Wolfe*, No. 21-CV-6949, 2021 WL 4865317, at *2 (S.D.N.Y. Oct. 14, 2021) (holding that

---

[6] As the Court explained in *Lomtevas*, "[a]bsolute immunity is accorded to grand jurors and prosecutors under a 'quasi-judicial' theory so that they 'can perform their respective functions without harassment or intimidation.'" *Lomtevas*, 2006 WL 229908, at *5 (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)). "Persons performing adjudicatory functions within a federal agency" are also entitled to absolute immunity, as their role is "'functionally comparable' to that of a judge.'" *Lomtevas*, 2006 WL 229908, at *5 (citing *Butz*, 438 U.S. at 513-14).   Since this absolute quasi-judicial immunity is afforded to state government officials, *see, e.g., Imbler v. Pachtman*, 424 U.S. 409, 420-24 (1976) (quasi-judicial immunity afforded to a state prosecuting attorney); *Quartararo v. Catterson*, 917 F.Supp. 919, 949 (E.D.N.Y.1996) (state parole officers entitled to absolute immunity), the Court in *Lomtevas* reasonably concluded that it applied to Support Magistrates as well.  *See, e.g., Oliva v. Heller*, 839 F.2d 37, 39 (2d Cir. 1988) (explaining that quasi-judicial immunity applies when individuals are "performing discretionary acts of a judicial nature.").

court clerks "are absolutely immune from suit for functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court."); *Stephens v. Sullivan & Cromwell LLP*, No. 15-CV-1251 (LGS), 2015 WL 1608427, at *3 (S.D.N.Y. Apr. 9, 2015) (judicial immunity applies to a county clerk).

Here, as the Clerk of Court (Compl. ¶ 5), Kearse is being sued by Plaintiff for, in part, "transmit[ing] an Income Withholding [sic] Order for Support . . . demanding garnishment of [Plaintiff's] wages . . *.*" *Id*. at ¶ 10.   But court clerks "are absolutely immune from suit for 'functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court.'" *Lewis*, 2021 WL 4865317, at *2 (quoting *Garcia v. Hebert*, No. 08-CV-0095 (DFM), 2013 WL 1294412, at *12 (D. Conn. Mar. 28, 2013)).   As Plaintiff fails to identify any activity undertaken by Kearse falling outside of the ambit of absolute immunity, Plaintiff may not proceed on his claims against Kearse.

Accordingly, Plaintiff's claims are dismissed because both Defendants are judicially immune from suit.  *See Barton*, 2023 WL 6929178, at *5; *See Roger of the Fam. Forrest v. 45 C.F.R.§ 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) ("Plaintiff seems to assert claims arising from the efforts of Evans, a New York Family Court Support Magistrate, to assess and collect child support that Plaintiff owes pursuant to a Family Court order, and the efforts of Cafasso [a current or former New York Family Court First Deputy Clerk] to assist the Family Court in enforcing that order against Plaintiff.  These defendants are therefore immune from suit under the doctrine of judicial immunity.  Accordingly,

the Court dismisses Plaintiff's § 1983 claims against these defendants under the doctrine of judicial immunity and because these claims are frivolous.").

### 2.    The domestic-relations abstention doctrine

As noted above, Plaintiff's claims are subject to dismissal on judicial immunity grounds. But even if Defendants were not entitled to judicial immunity, Plaintiff's claims are still subject to dismissal.  To the extent that Plaintiff's Complaint asserts claims in which Plaintiff asks the Court to nullify a determination of the New York state court with regard to Plaintiff's obligation to pay child support, the Court must abstain from exercising its federal-question jurisdiction over these claims under the domestic-relations abstention doctrine.

"A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts."  *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also Deem v. DiMella-Deem*, 941 F.3d 618, 625 (2d Cir. 2019) (explaining that "*American Airlines* continues to be the law of this Circuit" after relevant intervening Supreme Court precedent).  Federal district courts must therefore abstain from exercising federal-question jurisdiction over claims involving domestic-relations issues and dismiss those types of claims for lack of jurisdiction when they are asserted under diversity jurisdiction. *See id*. at 621-24.

Courts in this district routinely find that the domestic-relations abstention doctrine bars federal courts from exercising federal question jurisdiction over claims that affect family court proceedings.  *See Evans v. Adams*, No. 22-CV-3882 (KAM) (JRC), 2024 WL 306240, at *3 (E.D.N.Y. Jan. 26, 2024) (where the district court abstained from hearing the plaintiff's claims when, although the allegations were framed "in constitutional terms," the "requested relief as a practical matter" would require the court to overturn "decisions in the underlying state court

action"); *Shaheed v. Waldeier,* No. 24-CV-915 (RER) (MMH), 2024 WL 964930, at \*2 (E.D.N.Y. Mar. 5, 2024) (citing *American Airlines,* 905 F.2d at 14) ("Although Plaintiff alleges Constitutional violations, the requested relief would infringe on the state court's expertise in resolving family court matters.")

Plaintiff, in his Complaint, notes that "[t]he instant matter before this court is not intended to be . . . an effort to argue or consider the merits or procedures of [the Family Court Petition]." Compl. ¶ 22. But in the same paragraph, Plaintiff notes that the Complaint "is intended to challenge the commercial activities of NYS CHILD SUPPORT PROCESSING CENTER and FAMILY COURT OF THE STATE OF NEW YORK, COUNTY OF QUEENS." *Id.* (emphasis in original). While it remains unclear what these "commercial activities" actually entail, Plaintiff has requested that the Court grant relief which would invariably call the Family Court's judgment and determinations into question. *See* Compl. ¶¶ 29-31.

Therefore, to the extent that any of Plaintiff's purported claims request that the Court review matrimonial and child support decisions made by the Family Court on matters arising from the Family Court Petition, this Court lacks the subject matter jurisdiction to do so. Said claims are subject to dismissal.

### 3.    The *Rooker-Feldman* doctrine

Further, to the extent that Plaintiff seeks review of previous state judicial proceedings, such review is also barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a doctrine of civil procedure enunciated by the United States Supreme Court in two cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that federal district courts shall not sit in direct review of state court decisions unless Congress has passed a

statute to authorize such relief. *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).  In practice, *Rooker-Feldman* bars federal district courts from becoming a court of appeals for state court decisions. *Id.*  Instead, a person seeking relief from a state court judgment must find a state court remedy or obtain relief from the United States Supreme Court pursuant to 28 U.S.C. § 1257. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("§ 1257, as long interpreted, vests authority to review a state court's judgment solely in [the Supreme] Court").

   *Rooker-Feldman* bars federal courts from reviewing claims that were not only raised in the state court action, but also claims that were not raised but are nonetheless "inextricably intertwined" with the state court judgment. *Hoblock*, 422 F.3d at 86–87.  There are four requirements for the doctrine to apply: "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016) (quoting *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010)).  Requirements one and four are considered "procedural," and elements two and three are considered "substantive." *Hoblock*, 422 F.3d at 85; *Francis v. Fed. Nat'l Mortg. Ass'n*, No. 20-CV-5863 (EK) (MMH), 2023 WL 2707098, at *5 (E.D.N.Y. Mar. 30, 2023).  "While all four requirements must be met to preclude jurisdiction, the second requirement is the 'core' requirement." *Francis*, 2023 WL 2707098, at *5.  "The causation requirement is only satisfied if 'the third party's actions are produced by a state court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015)).

The long-standing *Rooker-Feldman* doctrine "provides that, in most circumstances, the lower federal courts do not have subject matter jurisdiction to review final judgments of state courts." *Morrison v. City of N.Y.*, 591 F.3d 109, 112 (2d Cir. 2010) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-16 (1923)).  It is well settled that the *Rooker-Feldman* doctrine precludes lower federal courts from exercising jurisdiction over claims that seek to "collaterally attack"—*i.e.*, reverse or modify—a state court judgment.  *See Lipko v. Christie*, 94 Fed. Appx. 12, 14 (2d Cir. 2004) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 n. 16 (1983)); *Davis v. Baldwin*, 12-CV-6422, 2013 WL 6877560, (S.D.N.Y. Dec. 31, 2013) (applying *Rooker-Feldman* doctrine to review "collateral attack" of Family Court Order); *Anghel v. N. Y. State Dep't of Health*, 947 F. Supp. 2d 284 (E.D.N.Y. May 29, 2013) (*Rooker-Feldman* "mandates that a federal district court may not review collateral attacks upon a state court determination.")

Here, while Plaintiff's Complaint notes that his claims should not be interpreted as "an effort to argue on consider the merits or procedures" of the Family Court Petition (Compl. ¶ 22), Plaintiff's requested relief requires this Court to review certain determinations made by the Family Court.  *See, e.g., id.* at ¶¶ 28-32.  But as Plaintiff's claims are "inextricably intertwined" with the Family Court's determination, the *Rooker-Feldman* doctrine prohibits this Court from reviewing such determinations.  *Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 355 (E.D.N.Y. 2004) (citing *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir.2002)) ("This doctrine also prohibits a district court review of state court judgments to claims that are "inextricably intertwined" with a state court's determinations.").

Additionally, an application of the four *Rooker-Feldman* factors favor a finding that Plaintiff's claims are barred by the doctrine.  First, it is clear that Plaintiff lost in state court as Plaintiff's own submissions (*i.e.* the Income Withholding Order) denote a sufficient judicial loss. *See Remy v. New York State Dep't of Tax'n & Fin.,* 507 F. App'x 16, 18 (2d Cir. 2013) (rejecting a plaintiff's contention that a family court child support arrears order was merely administrative or ministerial as "[t]he Family Court's arrears order was an entirely sufficient judicial loss because [plaintiff] had a full and fair opportunity to litigate that issue.").  Second, as outlined above, Plaintiff's submissions are riddled with complaints of injuries caused by the state court judgment. *See, e.g.* Compl. at ¶¶ 8, 22, 29-31.  Third, Plaintiff's requested relief invariably requires this Court to review the Family Court's determination and call its judgments into question—a review that is cautioned against (if not prohibited) by controlling authority in this Circuit.  *American Airlines,* 905 F.2d at 14.  Finally, the determinations at issue were made by the Family Court on February 22, 2023 (Dkt. No. 8 at 1), April 17, 2023 (Compl. ¶¶ 10; 38-44), and October 4, 2023 (*Id.* at 45-54)—all of which were issued prior to the filing of the operative Complaint on October 19, 2023. Dkt. No. 1.  Therefore, to the extent that Plaintiff's claims require this Court to review the Family Court's determinations, such claims are barred by the *Rooker-Feldman* doctrine and must be dismissed.

Accordingly, Plaintiff has failed to allege that this Court has subject matter over any of the claims asserted in the Complaint.  Therefore, Plaintiff's claims are dismissed for lack of subject matter jurisdiction.

**B.**     **Plaintiff fails to state a claim upon which relief can be granted.**

Even if the Court had subject matter jurisdiction here (and it does not), Plaintiff's claims are still subject to dismissal under Fed. R. Civ. P. 12(b)(6).

**1.**     **Plaintiff's slander, libel, and failure to protect claims**

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the [plaintiff's] interest in a reputation and good name." *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). Specifically, a defamatory statement is one that "exposes an individual to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace," or one that would "induce[ ] an evil opinion of one in the minds of right-thinking persons," and deprive the plaintiff of "confidence and friendly intercourse in society." *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 177 (2d Cir. 2000) (alteration and quotation marks omitted). Because Plaintiff's defamation allegations turn on written text produced by the Family Court, the Court construes Plaintiff's claim as a claim of libel. *See Albert*, 239 F.3d at 265 (explaining that "[g]enerally, spoken defamatory words are slander; written defamatory words are libel"); *Solstein v. Mirra*, 488 F. Supp. 3d 86, 95 (S.D.N.Y. 2020) (construing a *pro se* defamation claims as a libel claim). "Under New York law, a plaintiff must establish five elements to recover in libel: (1) a written defamatory statement of fact concerning the plaintiff; (2) publication to a third party; (3) fault (either negligence or actual malice depending on the status of the libeled party); (4) falsity of the defamatory statement; and (5) special damages or per se actionability (defamatory on its face)." *Celle*, 209 F.3d at 176.

Whether particular words are defamatory presents a legal question to be resolved by the court[ ] in the first instance." *Id*. at 177 (citations omitted). Accordingly, courts should evaluate each allegedly defamatory statement to determine whether it is actionable at the pleading stage.

*See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 458 (S.D.N.Y. 2012) (explaining that "the [c]ourt [would] evaluate each allegedly defamatory statement (or set of statements) and determine whether it is actionable, granting dismissal of claims based on nonactionable statements and denying dismissal with respect to claims based on actionable statements"); *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 625 N.Y.S.2d 477, 649 N.E.2d 825, 892 (1995) ("Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation.").

Here, Plaintiff fails to assert *any* fact or assertion supporting a libel claim.  Plaintiff concludes, without factual support, that "Defendants Jessica Sin and Keisha Kearse have committed the acts of … slander or libel."  Compl. ¶ 24.  But no liberal reading of the Complaint points to a libelous assertion.  The Complaint also fails to identify which of Defendants' statements were allegedly defamatory.  Additionally, Plaintiff's conclusory allegations do not plausibly allege that *any* statement made by *any* of the Defendants is materially false or that Plaintiff has been financially or reputationally harmed by this purportedly false statement.  *See Landa v. Am. Prospect, Inc.*, No. 22-CV-1825 (JMA)(ARL), 2023 WL 5266334, at *6 (E.D.N.Y. Aug. 16, 2023).  Accordingly, Plaintiff does not state a claim for defamation upon which relief can be granted.

Similarly, Plaintiff fails to assert facts supporting its "failure to protect or act" claim. Where such a claim is a mere legal conclusion, this claim must be dismissed.  *Weinstein Co. v. Smokewood Ent. Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009) (citing *Iqbal*, 556 U.S. at 664 (2009)) (finding that a plaintiff cannot survive a motion to dismiss for failure to state claim on which relief could be granted merely by alleging the violation of a legal right as legal conclusions must be supported by factual allegations.).

Therefore, this Court finds that Plaintiff has failed to assert any facts supporting its defamation and "failure to protect/act" claims. Such claims are hereby dismissed.

### 2.    Plaintiff's trademark infringement claim

The gravamen of Plaintiff's Complaint, and his basis for federal court jurisdiction, is that Defendants unlawfully infringed upon his registered service mark. *See generally,* Compl. Plaintiff alleges, in relevant parts, that a duly-recorded service mark—bearing his full legal name—was recorded into the "NEW YORK Register" (emphasis in original) *nunc pro tunc* to his date of birth. *Compare* Compl. ¶ 9 and Compl., at 41. Because Plaintiff purportedly had a valid service mark, Defendants infringed on his mark by referencing his full legal name in Family Court documents. *Id.* at 10-11. Although Plaintiff tried placing Defendants on notice of infringement by serving them with a litany of records and documents, Defendants' failure to respond purportedly gave rise to a cause of action for infringement requiring Plaintiff to turn to a federal district court—seeking an order compelling the Defendants to remit payment in accordance with Plaintiff's "Fee Schedule." *Id.* at 25-27. This Court finds that Plaintiff failed to properly plead a trademark infringement claim.

The Court need not engage in a trademark infringement analysis as Plaintiff's submissions and the allegations contained therein are characteristic of claims by purported "sovereign citizens." *See United States v. Bommer*, 613 F. Supp. 3d 712, 717 (W.D.N.Y. 2020) (finding that a plaintiff's reference to her name as a "trademark name" and repeatedly referring to other individuals as "corporations" as characteristic of claims by "sovereign citizens."). The United States Court of Appeals for the Second Circuit has described "sovereign citizens" as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." *United States v. Ulloa*, 511 F. App'x 105, 107 n.1

(2d Cir. 2013). "The 'sovereign citizen' belief system has been described by other courts as 'completely without merit,' 'patently frivolous,' (*United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992)), and having 'no conceivable validity in American law,' (*United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990))." *Bommer*, 613 F. Supp. 3d 712, 717. "[L]egal-sounding but meaningless verbiage commonly used by adherents to the so-called sovereign citizen movement" is nothing more than a nullity. *See United States v. Wunder*, No. 16-9452, 2019 WL 2928842, at *5 (D.N.J. July 8, 2019) (discussing the futility of the sovereign citizen verbiage in collection claim for student loan).

When claims are, as here, premised on a plaintiff's rights as a "sovereign citizen," those claims are dismissed as frivolous and for failure to state a claim. *Id.*; *Barton*, 2023 WL 6929178, at *6; *Garcia v. Cnty. of Bucks*, No. 17-CV-3381, 2017 WL 4844293, at *2 (E.D. Pa. Oct. 26, 2017) (dismissing plaintiff's trademark claims where plaintiff was a sovereign citizen seeking relief under admiralty, copyright, and trademark laws); *Johnson v. Scharf*, No. 23-CV-4211, 2023 WL 7532488, at *1, n.1 (E.D. Pa. Nov. 13, 2023) (dismissing trademark claims where the plaintiff represented to be a "living trust" as the "meaningless verbiage" of an adherent to the so-called sovereign citizen movement) (citations omitted); *People of New York v. Latnie*, No. 1:14-CV-1581 (DNH) (DEP), 2015 WL 512800, at *1, n.1 (N.D.N.Y. Feb. 6, 2015) (dismissing trademark claims by a sovereign citizen who recorded his full legal name as a trademark).

The crux of Plaintiff's Complaint involves a contention that Family Court child support orders are unlawful infringements upon his state-registered service mark by the mere reference to his full legal name. Though stylized as a trademark infringement claim, Plaintiff's claims are, at bottom, naked assertions that "state and federal governments lack [] legitimacy and therefore have no authority to regulate [his] behavior." *United States v. Ulloa*, 511 F. App'x 105, 106 n.1 (2d Cir.

2013) (summary order).   For example, Plaintiff purports to be the "Absolute Trustee" of a "revocable living trust" bearing his full legal name. *See, e.g.* Compl., at 58.  Indeed, a mere cursory review of Plaintiff's purported "Trademark License Agreement"—as served on Defendants—reveals that Plaintiff seeks to engage in a licensing agreement for the use of his mark—his full legal name—with the Family Court of the State of New York, County of Queens. *Id.* at 59-61.

In sum, the Complaint and its supporting affidavits and exhibits make clear that Plaintiff is an adherent to the "sovereign citizen" movement and seek to assert legally frivolous claims.  As Plaintiff fails to properly plead a trademark infringement claims, such claims are hereby dismissed with prejudice.

## IV.   <u>Leave to Amend</u>

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015); *accord Bey v. Trump*, 850 F. App'x 809, 810 (2d Cir. 2021) (summary order).  But a court has the inherent power to dismiss without leave to amend or replead "where the substance of the claim pleaded is frivolous on its face," or where amendment would otherwise be futile. *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *accord Thomas v. Carter*, 581 F. Supp. 3d 651, 656 (S.D.N.Y. 2022); *see also Shapiro v. McManus*, 577 U.S. 39, 45-46 (2015) (holding that federal question jurisdiction is lacking where the claims are "wholly insubstantial and frivolous," "essentially fictitious," or "obviously without merit").  Because the asserted claims are legally frivolous and because the defects in the Complaint cannot be cured with an amendment, any request for leave to amend the Complaint shall be denied. *See Barton,* 2023 WL 6929178, at *6.

## V.     <u>Conclusion</u>

Accordingly, Defendants' motion to dismiss Plaintiff's Complaint is **GRANTED** for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).   Plaintiff's claims are dismissed with prejudice.   The Clerk of Court is respectfully directed to terminate all pending deadlines and hearings in this action and to close this case.

Dated: Brooklyn, New York
         April 26, 2024

                              **SO ORDERED**.

                              _____*s/ Joseph A. Marutollo*_____
                              JOSEPH A. MARUTOLLO
                              United States Magistrate Judge